PER CURIAM.
This is an appeal by the unsuccessful plaintiff in a false arrest/false detention action from a summary final judgment. We reverse.
I
Our basis for reversal is our conclusion that in this type of action, the finding of probable cause by the committing magistrate at a first appearance does not establish an absolute defense to this cause of action when the record reflects, as this one does, that the accused was given no opportunity to present his version of the incident to the magistrate. We so hold, acknowledging that the magistrate complied with the requirements of Florida Rules of Criminal Procedure 3.130, 3.131 and 3.133 and the procedures described in The Florida Judges’ Manual Volume II, Chapter 1, Initial Proceedings (1985). Had the record *267 disclosed an opportunity for Mr. Butler to present evidence, coupled with the absence of any Reply to the Affirmative Defense raised by the defendants of the magistrate’s finding of probable cause, the situation would be factually different from the present one.
The plaintiffs acknowledge that the law is clear in malicious prosecution cases that when a disinterested magistrate finds probable cause and the accused is given an opportunity to participate, a presumption of probable cause arises in any subsequent action which can be dispelled by pleading and proof of fraud or other corrupt means employed by the person initiating the action. Gallucci v. Milavic, 100 So.2d 375 (Fla.1958). Here, no such pleading exists. The plaintiff/husband argues, however, that the absence of an opportunity for him to speak at the first appearance is a basis for dispelling the presumption of probable cause in an action for false arrest or detention.
Five of the twelve sitting judges of the First District Court of Appeal, in Burns v. GCC Beverages, Inc., 469 So.2d 806 (Fla. 1st DCA 1985) (en banc), apparently would agree with appellant even were this a malicious prosecution case. Nevertheless, seven judges of that court held that the presumption of probable cause existed in the non-adversarial finding of probable cause by a committing magistrate whose finding based on the affidavit of a law enforcement officer .occasioned the issuance of an arrest warrant. Chief Judge Ervin concurred in the majority result but said:
If a magistrate permits an arrest warrant to issue, without examination of the complainant or other witnesses, and fails to satisfy himself to a reasonable belief that the person complained against has committed the offense, as required by Section 901.02, Florida Statutes, the aggrieved person should not in my judgment be barred from establishing such facts in a later civil action for malicious prosecution. The negligent disregard of the law by the official responsible for the issuance of the warrant would, under such circumstances, have nothing to do with any fraudulent or corrupt motive on the part of the person initiating the prosecution, but it would be relevant to a consideration of whether probable cause existed for the issuance of an arrest warrant. If in fact a magistrate so shirked his judicial responsibility as to make the probable cause determination a sham, cf. Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla.1977), such fact could serve to negate any presumption that probable cause existed to prosecute.
Id. at 810.[1]
The foregoing concern of the effect of a summary procedure upon a party’s civil remedy is something we should not, and do not, take lightly.
Turning then to this case, we believe a distinction, in kind, could exist between an action for false arrest and detention with a defense of probable cause, on the one hand, and a cause of action for malicious prosecution which has, as one of its elements, the absence of probable cause. Johnson v. Weiner, 155 Fla. 169, 19 So.2d 699 (1944). We are, perhaps, plowing new ground; but there is no contrary law in a false arrest action from this state’s highest court which would give the defendants here, with their burden of proving an affirmative defense, the benefit of the presumption afforded the defendant sued for malicious prosecution. As the plaintiffs contend, there is a public policy to protect those unjustifiably arrested by allowing for a civil action by the accused. The other side of the coin, of *268 course, is the effect upon law enforcement officers, who may fear they can be sued easily by anyone found not guilty of a crime for which they made the arrest or caused the detention of the accused.
Our bottom line is our value judgment that we believe a citizen who claims to be falsely arrested and who is prevented from participating adversarially in a first appearance, should not be precluded per se from a civil remedy because of the non-adversarial, summary determination of probable cause. As stated by Justice Brennan in his dissent in McCommon v. Mississippi, — U.S. —, —, 106 S.Ct. 393, 396, 88 L.Ed.2d 345, 348 (1985):
[T]he police may rely on the magistrates and the magistrates may rely on the police. On whom may citizens rely to protect their Fourth Amendment rights?
II
Our reversal against both defendants is based upon the plaintiff husband’s deposition, which reflects that both defendants were involved in his arrest. It reads as follows:
Q. Now, you attended the depositions of Officer McAllister, Officer Burke and Deputy Sheriff Fafeita last week; did you not?
A. Yes, sir.
Q. Did any of those three put you in the police car?
A. No, sir. I walked out and got in myself, and my dog to my car.
Q. Did any of those three ask you to go out and get in the police car?
A. Ask me to go out and get in the police car? They told me I was under arrest and—
Q. Did any of those three tell you you were under arrest?
A. Yes.
Q. Which one?
A. There was two of them that spoke up in that respect and I think that was Fafeita and Burke.
Q. Did Burke tell you you were under arrest?
A. I think the one that really said I was under arrest was Fafeita.
Q. Okay. Did any of those three read you your rights at the Connector Pawn Shop?
A. Yes, sir.
Q. Which one?
A. Fafeita read me my rights there.
Q. All right. Did anybody place any handcuffs on you?
A. No, sir.
Q. Were their handcuffs ever placed on you?
A. Not until I left the Vero Beach Police Department and was transported to the county.
Q. And who put the handcuffs on you at that time?
A. The transporting officer.
Q. Now, you were taken to the Vero Beach Police Department; is that correct?
A. Yes, sir.
[[Image here]]
Q. Well, do you recall there being any conversation between you and Officer Burke that was not on the tape?
A. I don’t know when he turned it on and when he had it off. At that time, you know, I was led to believe by him that he was the arresting officer.
Q. What did he say?
A. Well, he told me he arrested me and he told me the problems I was going to have.
Accordingly, we find no merit in the City’s argument that the plaintiff's post-deposition affidavit contradicts the earlier deposition and should not be considered. Moreover, the trial court did not consider it, and we find no need to do so insofar as it relates to identification of the arresting officer.
ANSTEAD and GLICKSTEIN, JJ., and GODERICH, MARIO P., Associate Judge, concur.

. We are aware that in Lee v. Geiger, 419 So.2d 717 (Fla. 1st DCA 1982), the First District Court of Appeal said in holding that defendants’ motions for directed verdict should have been granted in an action for malicious prosecution and false arrest:
Investigation or police procedure can be so inadequate as to constitute lack of probable cause. See generally Garris v. Rowland, 678 F.2d 1264 (5th Cir.1982). However, the facts in this case show that at most Detective Lee was guilty of poor judgment in conducting his investigation and that such action does not constitute legal malice. It is not even contended that Detective Lee acted with ill motive or actual malice.
Id. at 719.